and Mr. Cassell, you'll lead us off. Thank you so much. Paul Cassell and if I could introduce Brad Edwards and Jay Howell, co-counsel. Also present in the courtroom is Brittany Henderson, who is co-counsel and petitioner in this case, Ms. Courtney Wild. As Your Honor mentioned, this case is, we think, unique in the history of American law. In 2004, Congress passed the Crime Victims' Rights Act, a comprehensive statute to make sure that victims were treated fairly in the criminal justice process and not kept in the dark about their criminal case. And yet, for several years, federal prosecutors in this district did exactly what Congress had forbidden. As the district court has found, as findings of fact, the government concealed a non-prosecution agreement and misled the victims into thinking that federal prosecution was still a possibility. Can I ask you maybe what, in my mind, is a threshold question about whether this statute applies pre-indictment? Yes. What's the best sort of textual or statutory hook for applying pre-indictment? You know, if you look at the list of rights, some of them sort of obviously apply in the context of an ongoing prosecution. Some are somewhat more ambiguous. Some are so broadly worded that they might apply anywhere. But what's the best textual hook for applying it pre-indictment? And if I could just preface my comments by pointing out, obviously, we have argued in our brief that that issue is not before the court. The judgment below rests on non-merit grounds, that there was no jurisdiction. The court never reached the merits. And what you are now asking is a question that goes to the merits of the dispute. I suppose we don't have subject matter jurisdiction because there's no standing. We have to raise that. We have to consider that point. Well, as we point out in our brief, the question would be one of statutory standing, not constitutional standing. No standing at all, I suggest, because there's nothing a district court could do to enforce the rights pre-indictment. Do you follow me on that? I follow the question. What would happen is if the district court entered an injunction requiring the prosecution to do this, that, and the other thing. I agree that literally the statute applies pre-indictment, but there's nothing a district court can do. If it entered an injunction, it then becomes the prosecutor. It's overseeing the executive branch function. Do you follow me? I follow the question, but I think that's not the… We disagree with that premise, and let me explain why. Therefore, since there's been no indictment in this case, there's nothing that the district court can do. That's not what the district court found in this case. The district court never raised this issue, and we didn't raise it on appeal on the attorney privilege doctrine in our appeal. Yes. We raised the question whether we had jurisdiction to entertain the interlocutory appeal. Nobody, nobody, nowhere, not in the government's motions, not in their responses, not in anything in this case so far has anybody raised the question. Whether or not the right is redressable. And in 2000… Notwithstanding the separation of powers doctrine, which prevents federal judges from intruding into the executive branch function, which is what's going on here. With all respect, Your Honor, I think it's a much narrower question that's in front of the court. The only question in front of this court right now is whether the district court was correct in deciding that the case had become moot. Questions that are being raised go to the merits of Ms. Wild's claim, questions that were resolved in her favor in front of the district court. In 2013… Well, let's suppose we say it's not moot, we're going to… Then you send it back… We'll confront the standing question then. If you say it's not moot, all you do is send the case back to the district court. Why would we send a case back to the district court with instructions that you can't do anything, district judge, because of separation of powers doctrine? What you would do is you would say that the district court erred in finding this case to be moot, and therefore proceedings should continue. Now, the issues you're raising go to the merits of this case. The government raised no cross-appeal. All the issues that… This is a case that came out of the Southern District of Florida. Correct. Okay. We have to decide whether there's subject matter jurisdiction in the sense of standing. Do you agree? I agree that you would have to decide whether there's constitutional standing, but the court has made clear that… Well, there's no… There's nothing… I speak for myself. A district judge could not enter an injunction under this statute, pre-indictment, and provide a remedy for everything that a victim is entitled to under the statute, pre-indictment, without intruding on the executive branch function. We respectfully disagree with that position, and the district court in 2013 rejected that position as well. The district court concluded that with respect to the constitutional separation of powers, it can't order the government to prosecute someone. But it is obligated under the Crime Victims' Rights Act, 3771 section B1, to ensure that Ms. Wild and other similarly situated victims have their rights. Let me give you a simple illustration. Suppose the government was not sending out notices that it was obligated to do. It doesn't intrude on prosecutorial discretion for a court decision. No, no, no. But we would be doing it under the injunction power and enforcing it through contempt power. Whatever order the district court entered would be injunctive, enforceable under contempt power. Well, I think that's the wrong way of… That is what would bring the court into the executive branch function, you see. No, I think what you would be seeing in that situation is simply the court following the law, the law that Congress passed, which requires district courts and courts of appeals, for that matter, to enforce crime victims' rights. Okay, so if I could just rewind the tape a little bit. What's the best textual hook for the notion that this applies pre-indictment? For purposes of this argument, you need to assume that we think that the appeal brings up any prior orders with it. The final judgment brings up everything. All right. We're going to ask some merits questions. Sure. We understand your position. Yes. They had to file a separate course appeal. That's right. For purposes of this, let's just assume we're proceeding on some of these underlying questions. The reason I ask is that I actually thought that the best textual hook was probably 3771C1. C1, yes, and D3 are the two… We're calling the coverage – I think you've called the coverage provision, or someone's called it the coverage provision? Yes. That it applies to the DOJ and other departments and agencies engaged in the detection, investigation, and prosecution of crime. Detection and investigation, your point is, predate an indictment. Correct. The thing I wonder about is that sounds like a to whom provision, not a when provision. Like it applies to agencies that do these sorts of things, but it doesn't say when the rights sort of attach. And then I worry about the practical implications of this list of rights applying pre-indictment. I mean like is your position that police officers, the FBI, would need to consult with victims before they seek a warrant, before they conduct an interrogation? No. Why? I mean those are detection and investigation functions, right? Right. So what you have to do is look at the specific facts of a case. And recall that in this particular case, the case had matured much beyond the sort of preliminary stages that you're talking about. And at that point, federal prosecutors were negotiating with a vast defense team from Epstein. And what the district judge concluded in this particular case, where there were ongoing negotiations and indeed a formal agreement that was being reached to resolve criminal charges. At that point, a conferral obligation existed. And let me make clear, there's one other court of appeals that's addressed this question, the Fifth Circuit, and in Radine. And the Fifth Circuit, a decision not cited in the government's brief, reached exactly the same conclusion. That look, there may be boundary line questions as to how far this extends. But surely at some point, when prosecutors are negotiating with defense attorneys and signing agreements, at that point at least, a conferral right exists. And again, that's an issue that the district court looked at carefully, wrote an extensive opinion on it. It's not cited in the government's brief, so we haven't had a chance to respond to whatever points they may want to make in response to that. And again, you've mentioned C-1. How about subsection D-3? The victim objected to an agreement not to prosecute under these circumstances. I'm sorry? They objected. They had timely notice, et cetera. They would have objected to the non-prosecution agreement. Do you agree? Correct. All right. Implicit in that is that the government should have sent the case to the grand jury. We disagree with that. Well, wait a minute. You do? Yes. Even? They would have objected to the prosecutors, and they would have hoped Ms. Wild can be very persuasive. I know they objected to the prosecutors, and the prosecutors say, sorry, but we're going to proceed. Yes. So they now want an injunction. But we never did that. Well, suppose they consult with the prosecutors, and the prosecutors say, we're not going to indict. We're going to do X, Y, Z. Yes. And the victims disagree with that. That's the end of the matter under the Crime Victims' Rights Act. The case is closed and over at that point. Well, wait a minute. There's no case. I mean, could they go to court and seek relief? Not under the Crime Victims' Rights Act for that. No, no, no. Because the prosecutors had not consulted with them before deciding not to go to the grand jury. So in this, it depends on the fact. Let's just take that hypothetical. Right. I see. Would you have a claim? It would depend on the facts of the case. The facts of the case are they are not going to prosecute the case, not going to send it to the grand jury. And the victims were not notified. And the victims now file a lawsuit because they were not notified. The case could still go to the grand jury. They're not notified and they want an injunction. Okay. And tell me what the injunction would look like. Well, we wouldn't be seeking an injunction because that is not something that the Crime Victims' Rights Act forbids. Well, some relief before the district court. Right. What do they ask the district court to do? So what we ask the district court to do in this case. No, no. Let's stick with the hypothetical case. What would they ask the district court to do in that case where the prosecutors are probably not going to send it to the grand jury, the victims get wind of that, and they file suit because they weren't consulted? If they lost their right to confer, what they'd want is an injunction. They lost their rights. What does the judge say in his order? The judge says to the government that it needs to ensure that the victims receive their rights under the policy. Suppose the government doesn't do what the judge says they should do, then what? Well, that would raise a very interesting question at that point. They would file a motion for a show cause why the government prosecutors should not be held in contempt. Do you agree? That would be one potential remedy. But that would be a logical one, wouldn't it? That would certainly be one remedy. But I don't think it would be the first one. Then if the court issued a show cause order and then had a hearing, isn't the court now getting involved in the prosecutorial function? It's overseeing the U.S. attorney's offices functioning in this case. It's not overseeing the charging decision. What it is overseeing is the enforcement of a congressional- I understand that, but they're overseeing the prosecutor's interaction with the victims pre-indictment. Correct. Okay, well, that means we're going to have a hearing. As I understand your pleadings and your briefs and the district court's order, all that is required is that they confer with your clients. Once they confer, then the rights have been insured and have been protected. Would that be correct? That's correct. All right, so you really have a narrow claim here throughout this case that all you wanted was notice and an opportunity to confer. After the conferral right, then the government can do whatever it wants to do. Exactly. You wouldn't be seeking to enjoin anybody from doing anything. All you want is the government to be required, as provided in the statute, to confer with a victim before whatever they do. Charge, don't charge, do nothing, go to the grand jury, not go to the grand jury. You're not into any of that. All you want is a recognition of the right to have notice to the victim and a conferral right. Is that the narrow claim in your case? That's exactly right, Your Honor. And that's exactly what Judge Marra ruled in 2013. He said, look, I understand that under separation of powers, courts cannot make decisions. And also, we're a cabin by the facts of this case. This was way down the road. This wasn't in the law enforcement stage. This was in a prosecutorial aggressive situation. They'd actually prepared an indictment with 54 counts or 34 or whatever. And further, we have a fact that I don't think the government, I think it's good the government, the way they wrote their brief. They do not deny. So I think this case can be really narrow here. I don't know what the answer is, but it's really narrow. Because we've got a case here where the government agrees, does not dispute, Judge Marra's finding, as a matter of law, as a matter of undisputed fact, they concealed and misled. So that is also two very cabining limiting factors in this case. I agree with that. So any ruling about whether there was a conferral right necessarily is limited to that. Exactly. This is an unusual case where we have findings of fact of deliberate concealment. Way down the road, we have concealment. And so you're saying those are the facts here. And if you could now, maybe you want to go back to the statute of the conferral right. In that context, that's all you're saying, that it was a right that was violated here. That's right. And if I could add one additional fact. The government sent a letter to Ms. Wild saying, you have rights under the Crime Victims Rights Act. We're aware of the facts. I promise you all of us have studied the facts. And we know about the letters and the telephone calls and Mr. Edwards going to, you know, we got all that. But I think the underlying point is the one that you're making there, which is this is a very unusual fact circumstance. We're not asking for some broad ruling that in every case, you know, anything that the government does requires conferral. We're simply asking that in this particular case, where prosecutors were negotiating and, in fact, executing an agreement with defense attorneys, that in that circumstance the Crime Victims Rights Act gives the victims a right. And we have a concession here that they were concealing it. And not only concealing that they were doing it, they misled them saying we're still investigating. Exactly. And they weren't. And it was all really a done deal by the time all that happened. Right. Okay. And so you want a conferral right. Say my conferral right was violated in that scenario. And then we get to the remedy. I want to see if there are any other questions before we go to the remedy, because that's really, I think, what we're here about. I've just got one question for you. And I'm sorry that you're here. You feel like you're just fielding questions. Oh, happy to answer. As to what this case arises in a different kind of unique procedural posture in the sense that it is sort of outside the realm of an existing prosecution. And so there's this secondary, in my mind, sort of preliminary question about whether there is a cause of action, so to speak. The statute speaks in terms of a motion, which sort of sounds like something filed in an existing piece of litigation. Yes. And I think I've got this right that you filed, in fact, a fleeting called a motion, but it kicked off like a new case and was given a new civil action number and stuff like that. Is that the way it kind of works? That's exactly right. Judge Meris said it's a matter of administrative convenience. He was docketing it in a particular way. But, of course, substance should triumph over procedure here. Should we put a different case caption or a different style for the pleading, we would be happy to do that. No, no, no. I guess my question is if the statute talks in terms of motion, and at least in that respect sort of there's this no cause of action for damages provision, right? Correct. And then the statute itself speaks in terms of motion. Is that some indication that the statute doesn't provide you like a civil action? Well, it certainly provides remedies such as reopening a plea. You'll notice the provision in the Crime Victims' Rights Act that allows victims to reopen a plea in certain situations. And so this is essentially the functional equivalent in a non-prosecution setting. And it's important to remember that we have two other claims in addition to a conferral right. We have a claim that the government violated the right to be treated with fairness and that the government failed to provide accurate and timely notice of the June 30, 2008 hearing. Judge Mehra has only reached the first of the three questions. Those other two questions, those other two rights violations have not been addressed. You'll notice that the government's brief, even though we raised that very directly in our petition, does not respond to that. So I think at a minimum we have an uncontested argument here that Judge Mehra failed to reach two important claims presented by Ms. Weil. And at a minimum, the case should be remanded so that you can— Well, he kind of said I really treated—I addressed it. He kind of conflated it. So when I said they violated the act, how many different ways do I need to really say they violated it? They violated the act. Right. And that's kind of what he did. He didn't spell it all out. He just said you clearly violated the conferral right. Within that is other violations. But I think the finding, for example, the issue of whether a motion should have been filed, there could have been perhaps motions filed on the June 30, 2008 hearing. That was a court proceeding that was moving forward. Again, the government was giving misleading notices at that time. And because Judge Mehra hasn't reached that issue, we're unable to present additional arguments and additional remedies that might flow from all that. He said it's all one and the same, but that doesn't make any sense. When you're claiming that there was not only a violation of the right to confer about a non-prosecution agreement, but failure to give accurate notice about a court hearing, that's a different kind of right, one that I think might cabin some of the issues that you're thinking about, Judge Newsom. But again, all we're asking for here is for a remand back to the district court to address some of these issues. And I would again point out, we advance that argument in our petition. The government had a chance to contest that or respond. And as with many things in this case, rather than giving a direct statement about what was going on, the government simply remained silent. So I think you should ask the government directly, what about those other two rights? Why didn't you respond to that in your brief? Shouldn't Judge Mehra have been obligated to address those points before throwing the case out as somehow being moved? Okay, so as Judge Hull suggests, you want to talk about remedies a little bit? All right. Let me turn to the reason why the court should have awarded one particular remedy. Remember, he awarded no remedy. But one remedy would be rescission of the immunity provisions in the non-prosecution agreement. Recall that the judgment in front of you says that the district court had no jurisdiction to reach that issue because the proper parties weren't before it. And yet Rule 19 of the Federal Rules of Civil Procedure, which the government agreed were applicable in the district court, the district court had repeatedly applied the civil rules throughout this case. That rule, Rule 19, says, quote, that the person whose presence is necessary be made a party. Must order. That is not a question of discretion by the district court. That is a binding obligation, and we should have been given, let's say, 45 days to serve any co-conspirators that might have been necessary. Does the must there mean if the parties have sought to join an absent third person or that the district court must sua sponte do it? He must sua sponte direct the parties to the case to join the parties. The government, I think, is confusing the issue. If you look at, we've cited a 7th Circuit and 8th Circuit case. There's no controlling 11th Circuit case on point. But both the 7th Circuit and 8th Circuit have looked at that very language in Rule 19 and said what that means is the district court shouldn't dismiss the case but should direct the parties to join people who are necessary.  They're different factual contexts. But the principle is whether as between dismissing a case and not getting to the merits or allowing someone to try to join a party and getting to the merits of a case, the district court is obligated, as a general rule of procedure, to try to reach the merits of the decision. Bruce mainly argued joined them, but I had a basic question. If, in fact, they are not parties to the agreement to begin with, why do they have to be parties here if it was set aside? They were never a party. They certainly were aware of the lawsuit. Mr. Epstein moved to intervene to become a party. Yes. This case is between the government and the victims. Correct. He moved to intervene. I didn't understand if the agreement is, let's say, for sake of argument, so-called illegal because of violating the victims' rights. It doesn't mean they can't confer and then enter into the same agreement. But if they were never parties to the agreement to begin with, why do they have to be joined in the case to set aside the agreement? Why must they be joined? So that's our second argument found in pages 32 to 37 of our petition. I know it's like a page. The other argument is like six pages. Well, we have from pages 32 to 36 five pages of briefing in our petition. And, again, the problem is the government says not a word about that in response. So I'm looking forward to saving time for rebuttal because for the first time, if you ask that question to the government, we'll hear their position on this. They didn't give a position in their briefing. And just to amplify it. You're more versed in this because you write about this. So why, if you're not a party to the agreement to begin with, in a victim rights situation, I know there were four named co-conspirators, and I'm just putting the government on notice. It's something I was going to ask them about. Why do you even have to be a party to have it set aside, assuming the court has authority to set aside it, and that would be a remedy? Yes. And then everybody can argue about it later on. That's right. And that's exactly. They can confer with you about the co-conspirators, and then the government can reenter that agreement with the co-conspirators if they want to. Exactly. That's totally up to them. Exactly. The district court should have decided the dispute between Ms. Wild and the prosecutors. Those parties were in front of it. And then another argument we've made that the government hasn't responded to, which I think is implicit in your question, these co-conspirators were incidental beneficiaries of some contract between the government and Epstein. They don't have enforceable rights. I disagree. The government didn't respond to it. They have a footnote. They say, look, they've now conferred up in the SDNY with these co-conspirators. They had notice, and they got a chance to confer with the government up there. So I think it's not fair to say they didn't respond to it. Their response is it's already happened in another jurisdiction. So one of the problems on the New York issue is you've referred to a footnote in their brief, but there are no findings of fact. There's no factual record on anything that happened in New York. The government had nine weeks where they could have provided information to Judge Marrow if they thought the New York proceedings were relevant. We haven't had, again, a chance to respond to that. The government drops a footnote and is making representations about what happened. We would be happy to file some kind of a deal with you. How many named petitioners do we have here? One. One. And she represents other similarly situated victims. I know, but she's the only named person. In fact, from the brief, it looked like she did attend the hearing in New York and did confer with the government. The record shows, at least the transcript from the New York court, that she attended the hearing, but it doesn't show anything about what sort of conferral there would have been. Again, if the court's going to dispose of this case based on what kinds of conferrals may or may not happen, it's the government's obligation to make a record on that. There's no information. We have very significant information that we would like to present to the court on this point, but we realize we're in front of a court of appeals and you take the case as you find it. There are no findings about any conferral that the government may or may not have had with Ms. Wild. What I'd like to do since I'm, is reserve the balance of my time for rebuttal. Let me. We've got plenty of time here. Okay. Your argument is that the court can order the unindicted co-conspirators, that's what we'll call them, to appear in this civil, in this matter. Slightly different. Our argument is the court could have ordered us to serve them with pleas. All right. That's the, order you to serve them and they're going to bring the unindicted co-conspirators before the district court. If they want to appear, yes. If they're, if the court either orders you to summon them to come, or the court itself says so, they're going to be before the court, are they not? Well, we wouldn't ask for an order so that we summon them to court. We would ask that we'd be given an opportunity to serve them with pleas. All right. But the point of the matter, if they don't, then they're going to be bound. Right. Exactly. I'll make one observation first. They obtained no enforceable rights. Do you agree under the not prosecution agreement? Agreed. None? None. No. Because they can't be granted immunity by the U.S. Attorney's Office in that setting. Do you agree? I agree that they have no enforceable rights. The federal district judge would have to grant the immunity. Would he not? I agree that they have no enforceable rights. All right. So let's get back to the proposition that the court is going to bring these unindicted co-conspirators into this setting. And let's say this is before the not to prosecute agreement was executed. Do you follow me? Yes. Let's assume that. So the court is now going to bring these unindicted co-conspirators into the case, as it were, for the negotiation stage. Or the litigation right over. Whatever the case may be. Which means they might be indicted. Correct. Okay. And my concern is the court is now involved itself through its power of contempt to bring people before the U.S. Attorney's Office or get them in there and they might be indicted. I can't think of anything worse in terms of separation of powers. Can you? Yes, because we would be asking for much narrower relief than what you're describing. Yeah, but once the courts, as you all saw about once the camel has its nose in the tent, the whole camel gets in. And once the court issues an injunction, it's enforceable by contempt power. And the party in whose favor the injunction is issued, if it's not satisfied with what the court has done or what the prosecution has done, it's going to be back in a show-cause order. When the court issues that injunction, you agree that it's governed by Rule 65 of the civil rules? You agree with that? Yes, the civil rules, but we're not asking for that. What does Rule 65 command? Well, Rule 65 gives the option of a court order. What does it command? Well, it commands compliance. It commands that the order be specific. Right. Okay, so it's going to tell the prosecution in specific terms exactly what it's supposed to do. Do you agree? It's going to do that because it wants to avoid a show-cause hearing. Well, in the context of this case, we don't think that we would get to that point. We're talking in a broad brush now because it has to do with whether the statute reaches this sort of thing. Well, in these particular facts, which I think is judgmental... Well, let's just talk hypothetically. You've got a case, pre-indictment, no grand jury proceeding, and you haven't been advised victims in a case. They're now before the court. There are unindicted co-conspirators out there, potentially, and you want an order bringing them in before the court. Okay? All right. And the court is going to enter an injunction. In fact, under Rule 65. There, I think, we would differ with your view of the procedures. What the court would be ordering in this context is an opportunity for us to serve the co-conspirators so that they could present arguments to the district court if they so chose. I understand that, but the court has got to be very careful about the criminal liability potential of those co-conspirators, whether they're going to be bound if they don't show up. Correct. Okay, so they better show up, otherwise the court is really overreaching. Do you agree? Well, they would have the opportunity to decide whether they wanted to present arguments. Opportunity to decide whether they're going to show up. If they don't show up, they become potentially liable in some way. Right, so they may elect to present arguments to the court. That's what Jeffrey Epstein did. He elected to intervene in the case, and so we were simply asking for an opportunity to serve the co-conspirators so that they could present arguments if they so chose. And again, the only order that the court would enter would be one directing the government to comply with its CVRA obligations. I'm sure the government will confirm that they don't need a contempt citation or anything. If this court or the district court were to instruct them that they had certain obligations, I'm sure that they'll agree that they would follow those obligations. If I could reserve the balance of my time. Absolutely, you have the full 20. Thank you. All right, Ms. Steinberg. May it please the court. My name is Jill Steinberg, and I'm an assistant United States attorney for the Northern District of Georgia, and I represent the United States in this matter. Before I address the legal arguments presented by the petitioner, I would like to give the court some brief context in terms of the government's position. As the court well knows, in July of 2019, the U.S. Attorney's Office of the Southern District of New York indicted Jeffrey Epstein for a sex trafficking conspiracy for events that occurred in New York and in Florida. He was also charged with one substantive count of sex trafficking. Arguably, his prosecution came too late and ended too soon. That one substantive count must have been a New York offense because you couldn't have gotten jurisdiction over the Florida. Was it a New York offense? He was, in fact, charged substantively with offense in New York, but the underlying statute... I understand the conspiracy is about New York and Florida, but the substantive count was a New York transaction. That's true, but they could have charged him with substantive offenses that occurred in Florida. I don't know what all they could have charged him with. I'm just going to what you said they did charge him with. They did, in fact, charge him. The underlying statute... Go ahead. You've answered my question. Thank you. The matter that is here before the court is not the issue of whether or not the non-prosecution agreement was a good idea or a bad idea. Certainly, 12 years later, I think we all have opinions on that. And the case is not about whether or not the Southern District of Florida had a right to make the decision that they made. And I think we all agree that they did. The issue is whether or not the office was fully transparent with Ms. Wild about what it is that was going on with respect to the non-prosecution agreement. And they made a mistake in causing her to believe that the case was ongoing when, in fact, the non-prosecution agreement had been signed. The government should have communicated in a straightforward and transparent way with Ms. Wild. And for that, we are genuinely sorry. You agree there was not a conferral prior to the NPA? Yes. Right. And I think I'll agree you actually not only didn't honor her rights, you also misled her. You call it not transparent. I would say it was affirmative misrepresentation. I don't think you really dispute that. It is definitely in the record that the line prosecutor intentionally did not disclose the existence of the non-prosecution agreement for the reasons that she described. And so I hesitate to use certain words because they're pejorative as to that person. She explained what her intentions were and even if we think now, in hindsight, that wasn't a good idea, that's the only reason why I wouldn't adopt that particular word. But it's not that we disagree that there was not a disclosure of the non-prosecution agreement. So you agree as a factual matter that if the CVRA applies pre-indictment, you violated it? Yes. And so your legal position is,  it never applies pre-indictment. It cannot apply by definition of law in the NPA context. Correct, if there's not a charging document. So theoretically there could be a complaint instead of indictment. But when you look at the statute, each of the rights talk about there being the existence of a proceeding and even the definition of a victim is based on the existence of a federal offense and only by looking at what that offense is can one determine who is directly or indirectly injured. Well, sort of yes and no. I mean, as I said to Mr. Cassell, you look at that list of rights, some of them do sound like they arise in the context of an existing proceeding. The conferral right, frankly, is pretty generic. And then he talked about C1 and then we never let him really get to D3, but I know where he was going on D3, in the event a prosecution has not yet been instituted or some such. So what do you do with that? What does that mean? Well, with respect to the conferral, it talks about conferring with the attorney for the government in the case. And so there are two parts of that which are indicative of there actually being a charging document. Obviously, as this court knows, there are investigations that go on for a period of time without there being an assigned attorney. And so certainly the existence of attorney presupposes a certain level of maturity to the case. It also talks about the word the case, which is sort of indicative of there being a matter in which a court has some authority over. There are also other parts of the statute that talk about just attending proceedings, having notice of proceedings. Contextually, it's talking about the existence of a criminal action. And for that reason, there is one component of it, the issue of fairness, that does not have any kind of attachment to a particular proceeding. But looking at it in the larger context, it certainly appears as if the statute is presupposing the existence of a criminal. All right, so talk to me about C1 and D3. Investigation, detection, C1, in the event no prosecution is instituted, D3. So with respect to C1, what that provision is talking about is the individuals who are charged with enforcing the CBRA rights. So that means it might be an AUSA, it might be an agent, it might be someone else. But anybody who in the course of dealing with a victim, that person might be charged with enforcing or ensuring that those rights are met. So that's with respect to the first provision. With respect to the second provision, it's not necessarily that the case has not been charged or a case hasn't existed. It could just as well mean that the case has been closed. And certainly one of the things that the statute does provide is an opportunity for victims under certain circumstances to make a motion before the court to reopen a plea or a sentencing. And so it might be that that's what that is anticipating, is that there's already been a plea and a sentencing, there's been a judgment entered, and that case is closed. I've got to go back to D3, because I'm confused. It talks about motion for relief and writ of mandamus. And it says, the rights in A shall be asserted in the district court in which a defendant is being prosecuted for a crime, that would be a case, or, and I quote, if no prosecution is underway in the district court, in the district in which the crime occurred. Why would that not get pre-charged, that language? No prosecution is underway. How could you read that other than there is no charge indictment, no charging document yet? It's certainly susceptible to that reading, but it's also susceptible to a reading of the case has been closed, it's been charged, there's been a plea, there's been a sentencing, and that victim believes that she's been deprived of her rights, so she brings a motion in effect to reopen the case. So that's another way to view it. That would be like this case, NPA. She could bring a motion then. Or if no prosecution is underway, well, you said the case is closed. The case is closed here, or is it NPA? Well, there was never a criminal case. You're saying only if it goes to indictment and whatever comes after indictment, then the thing is closed, then that's what no longer underway means. It only means sort of no longer underway on the back end, not underway on the front end. In the larger context of the statute, I think it's more likely to mean that than it is to mean what it is the petitioner is arguing, which is the nonexistence of the criminal proceeding. When you look at the list of rights, and then you look at the list of remedies, all of it surrounds or presupposes the existence of a proceeding in which a petitioner would make a motion and get an expedited ruling from the court so the criminal proceedings could move forward. Let me ask you this. I think everybody is wise to heed Judge Hall's admonition that we want to talk about the merits, but I do, I guess, just have a question about the procedural posture, about the absence of what Mr. Cassell has called a cross appeal. So there's a ruling in 2011. This thing goes back so far. 2011, it was adverse to you. 2013, it was adverse to you. Could you, should you, have sought some sort of immediate relief from us? Would that have been a 1291, a collateral order? Do you have mandamus rights under this statute? How might you have put those rulings before us? I think it would have been difficult to do that, assuming there was a final order  The fact is that Mr. Cassell points out in his brief, interestingly, he indicates that our lack of cross appeals constitutes a waiver, but at the same time in his brief, he says we don't have a right to appeal. A bit awkward, but if you look at the statute, it gives the government an opportunity to file for a petition for writ of mandamus, but only if it's standing in effect of the victim. And so there isn't an opportunity for the government to appeal an adverse decision unless, frankly, it's also adverse to the victim. And so the statute does not give us an opportunity to do that. Because I guess ordinarily, as Judge Hull says, you know, our appellate practice is that the winner can defend and effect the judgment on any grounds supported by the record. But I guess it's difficult to figure out whether you're actually defending the judgment here because you've got dismissal aspects of this, you've got denial aspects of this. Some of your arguments would require a denial rather than a dismissal. So it's just sort of hard to figure out procedurally how all of this stuff gets before us. Yes. There's a lot of things that are unique about this case. And that's why the government wanted to raise as the threshold issue the issue of mootness of the case in light of the vindication of misfile of CVRA rights in New York. Because we certainly believe that was the clearest and a threshold issue that this court could reach really without having to go further. And it's in light of events that didn't transpire 10 years ago. And so that's one of the things that the government wanted to put forth to this court fundamentally. And one of the things that Mr. Cassell indicated is that there's nothing on the record to indicate that those rights have been vindicated. But Mr. Cassell himself was present in August of 2019 during the hearing that the district court held in New York on this very issue. Ms. Waddle was present. Is there any record in this case other than just say judicial notice or however you want to rely on it about the New York proceeding and what happened? Do we have any physical record, any transcript, anything? There's record in the context of the New York case. So all those records are publicly available. Have any of them been filed here? We haven't separately attached those documents. Is there a transcript been provided, filed in New York of what happened at that hearing? There is. There is a transcript that's on the docket there that reflects the full hearing. And did Ms. Waddle speak? She did. She spoke, and there were 20 other victims, more than 20 victims who spoke, including Ms. Waddle, at length. Some of them were there in person. Some of them spoke through a representative. Some of them provided a letter. And Mr. Edwards and Mr. Cassell both spoke. Mr. Edwards commended the U.S. Attorney's Office for the Southern District of New York for doing a great job. Mr. Cassell said, quote, this is a model for crime victims' rights and said that what happened that morning was a reflection of how it is that victims should be treated fair and reasonably. And so the idea that there's nothing for the court to look at to determine whether or not there's been a vindication of her rights I think is not true. Counsel, what is the relevance of anything that's going on or has been going on in the Southern District of New York? The reason why it's relevant is because the CVRA rights attach to the offense, and that offense... You're dealing with something out of the Southern District of Florida, and what difference does it make what happened later on in Southern New York? I have a difficulty understanding the relevance. Because it's the same offense, and I'm sure the court knows. I know it's the same victims, but what is the relevance? How does that have a bearing on whether the district court made a mistake in this case? Because the issue is whether or not Ms. Wild's CVRA rights have been vindicated, and whether there's a live case or controversy for the court. We've got all that problem, but I don't think the Southern District of New York, whatever the government does there, has any bearing at all, I speak for myself, any bearing on this matter before us now. I understand. The government's position is that because the Southern District of New York... I understand the government's urging to ameliorate the... overcome the mistakes that were made years ago down here. I can understand that. But beyond that, I don't think it's relevant. It is a little odd to say... I mean, I take your argument to be sort of like, come on, basically. But it is a little odd to say that because some other office, some other DOJ office, didn't flagrantly violate your rights and allowed you to vindicate your rights, that sort of whitewashes everything that happened down here. Well, the issue is whether or not her CVRA rights are being vindicated, and that isn't cabined to a particular year or a particular district. And we're not denying that what happened in the Southern District of Florida shouldn't have happened. Not because the CVRA covers it, but because it wasn't the right thing to do. And so we're not rejecting that factual proposition. But in terms of the legal significance of the case, in New York, they're prosecuting, in effect, the identical offense and are vindicating her rights there. And so there's nothing that is live or present, a remedy that could have a practical, meaningful effect here in Florida. Are the four named alleged co-conspirators in the NPA and the Southern District of Florida named as in the indictment in New York? No. There's an ongoing investigation. It's very publicly known. But there's no indictment in New York against any of the four named co-conspirators who purportedly received alleged immunity in this NPA. That's correct. It's just an open investigation. And so the CVRA might not technically apply, but on the record, there's been an indication that there has been conferral and communication between the victims of the offense and that office in conjunction with the Epstein case generally. I kind of wondered, generally, is the government really opposed setting aside this NPA as to the co-conspirators? Why do they need to be a party? Let's assume, for sake of argument, that you can proceed under the CVRA by way of motion pre-indictment. Let's just assume that. And let's assume that you have a violation of the CVRA here. And help me with whether you can, as part of the remedy, you could set aside the NPA. You could always re-enter it after conferral. What is your best case that you couldn't set aside the NPA here? If you assume the first steps, which I know you contest. I think Your Honor is correct that it's awkward to consider the co-conspirators as potential parties to the underlying case. The issue of the vindication of... This case here. Yes. The issue of the vindication... They didn't give up anything, that I can tell. Did they give up anything in the NPA? It was Jeffrey Epstein who negotiated it. So he's the one who gave consideration. Well, let's assume he was still alive. Do you think you could set aside the CPA here? Or the government would say they're not bothered by the prosecution up in New York? I'm sorry? If he were still alive, would you oppose setting aside the NPA here? Yes. The government has opposed setting aside the non-prosecution agreement. It committed to the agreement, and it continues to be committed to fulfilling its promise. And so even if the court were to find that you violated the rights, you say the remedy is not setting aside? That's correct. The government's position is that the rescission of the agreement is not offered. What would the remedy be? Well, the CVRA only applies for certain limited remedies to a victim. One of those remedies involves the existence of a court proceeding, which didn't exist here. There's also no... There's limitation as to lack of damages. So those are things that we know exist in the statute that involve an actual proceeding. But outside the course of an actual proceeding, there's an administrative remedy within the Department of Justice that a victim would have to avail herself of. But they say that's for the ombudsman. Is that what you're talking about? They say that's not really a remedy. That's just to have disciplinary action. It might be an inadequate remedy from their perspective. That's the remedy that Congress chose. Your statement... Oh, I get it clear. For matters pre-charge, let's assume charge includes the issues of a complaint in the district court pre-indictment. But forget that and just say indictment. Pre-indictment, the only remedy is administratively in the DOJ. Well, if the CVRA doesn't attach, then the issue of administrative remedies also doesn't... Well, whatever the victims want pre-indictment, the remedy is before the Department of Justice. If the CVRA were to attach, then that is one of the remedies that's available. In terms of pre-indictment... I'm talking about pre-indictment. Forget indictment. I know what situation is indictment. Pre-indictment, the remedy is administrative in the Department of Justice. Certainly, the ombudsman is available to anybody who wants to make a complaint. The district judge is not involved. Do you agree? Correct. Pre-indictment. Correct. What currently exists to regulate pre-indictment conduct is the VRRA. There's no remedy, but it's not an Article III district court who has no case. Yes. Okay.  and if I've just forgotten this, forgive me, but the stuff going on in New York. Was that denominated a CVRA hearing or what? Has the New York court concluded that the CVRA applies there, notwithstanding the fact that we are in the pre... or that you were once in the pre-indictment phase? The court held the hearing in the context of the motion to dismiss the indictment following Mr. Epstein's death, and so there wasn't any discussion about the attachment of the CVRA or not attachment of the CVRA. There was a lot of discussion about the import of listening to the victim, and so in that regard, there was discussion about the importance of the victims having an opportunity to speak because they wouldn't have an opportunity to speak in the future. Mr. Cassell talked about the CVRA and about this being a model, what happened in New York, for how it is that you've vindicated victims' rights and that they had been treated fairly. So in that regard, the CVRA came up, but there wasn't any kind of ruling by the district court that this is a hearing for CVRA purposes. So did conferral occur in the Southern District of New York, USAO, pre-indictment? Well, there was... Were they kind of doing CVRA stuff, if you will, pre-indictment up there? Well, the Attorney General guidelines and the VRRA, the Victims' Rights and Restitution Act, provide that that should occur, that we should be communicating with victims about what's happening during the course of investigation as appropriate, but it doesn't necessarily vest, well, it doesn't at all vest, a victim with an independent right of action, which is what the CVRA does. So I don't want this court to think that just because the CVRA might not apply in a pre-indictment context that that means it's, oh, prosecutors don't talk to victims. That's not the case. There is an existing law, the VRRA, which indicates that we should be communicating with victims about the course of investigation, if it's appropriate, because there could be potential dangers to talking about an ongoing investigation before it's actually come to fruition. And there's also Attorney General guidelines about the conduct of prosecutors, which is broader than what may be contained in the CVRA. And so in this particular case, we know from the record that that consultation did happen, but generally speaking, there's also other laws and regulations, guidelines on the books, that talk about what it is that prosecutors should be doing. Let's assume you had an indictment and you had a guilty plea and you had up to one count and the victims were never notified. You did a plea agreement. Could they come in and get any remedy other than trying to just be heard? The statute does provide for a remedy to reopen a plea or a sentencing under certain circumstances. Okay. And so as long as those three elements were fulfilled under the CVRA, they would have an opportunity to reopen a plea or sentencing. Okay. So the difference here then is really that this is a non-prosecution agreement. So you should say, while you could open up a plea, you can't open up a non-prosecution. That's basically what you're saying. Apologies. Yes, the statute as it's written. And if you think about the rights as not including a non-prosecution agreement, not including events that precede the initiation of a criminal case, it would make sense that the remedies reflect that. There is no remedy to reflect the fact that a non-prosecution agreement was entered without consultation because the statute doesn't anticipate that that's a right that attaches. And so it kind of doesn't make sense that they have a remedy if you have a plea to one count but not five. But there's no remedy at all if you just decide not to prosecute. That sounds counterintuitive to me. I understand why the court would feel that way. But there are certain dangers that are attendant to these rights attaching pre-charge. As an investigation is ongoing, things can change rapidly. Discerning who is a victim, who is potentially... We're not talking about just an investigation. We're talking about an NPA. We're limited to a non-prosecution agreement and whether it should be treated like a plea given the statute as a whole. That's true. Once you reach the stage of a non-prosecution agreement, the case at least has matured to a certain extent. But I think the problem with the broader argument... Why hasn't it fully matured because they've entered into an immunity agreement? The case is done as to the defendant. As to that particular defendant, whether or not the broader case is still... And apparently as to four co-conspirators too. Well, certainly as to that particular defendant in a particular case, if there's a non-prosecution agreement, a prosecutor presumably has decided that the case has matured with respect to that person sufficiently, that that's the way to resolve the case. But there could be an ongoing investigation relating to that person still that potentially could be compromised by the revelation of this agreement. And that's one of the things that's a textured area. And so the current guidelines and the VRA allow for the possibility that there are times when a prosecutor needs to exercise her discretion in terms of what to say and how much to say to a victim. And that could be the reason why the VRA doesn't create enforceable rights in victims before the case has been fully matured and is charged. In New York, has the government taken a position as to the co-conspirators, they're bound by the immunity agreement down here or they're not bound by the immunity agreement or the issue hasn't been litigated yet? It has not been litigated yet. There was certainly an anticipation that Mr. Epstein was going to raise the issue and that no longer is going to occur. No, I'm talking about the co-conspirators. You say there's an ongoing investigation. He's deceased. There has to be an ongoing investigation as to somebody else, right? Correct. And have you given notice that there are targets, any of these four conspirators up in New York, that they're a potential target of the investigation? I can't speak as to the communications from the Southern District. We know from public statements what the Attorney General said and the U.S. Attorney's Office for the Northern District. And what have they said as to these four defendants? They've said there's an ongoing investigation. As to them, okay. So has the government taken a position as to whether you're bound by this agreement down here? I mean, it seems like you're investigating them. How can you do that if you've given them immunity? The terms of the non-prosecution agreement limit its application to this district. To this district. Correctly. Would you agree that it's not enforceable as to an indicted co-conspirator? Well, if this is in terms of the argument regarding whether they're... I'm talking about legally. Legally. Legally, the co-conspirators could not enforce the non-prosecution agreement. They might be able to. Under what doctrine? I do think they are intended beneficiaries of the contract between the government and Mr. Epstein. A contract, and how would that be enforced in an Article III court if they were indicted? What I would envision is... Would an Article III judge uphold that so-called contract? Well, at least in the context of the case against Mr. Epstein. Because that would be a mount of transactional immunity, wouldn't it? Not use, transactional immunity. Yes. You agree? Yes. All right, what is the current Supreme Court position on transactional immunity? I don't want to say I don't know. It's nonexistent, and it's not enforceable. Well, what... The only immunity, you agree, that's enforceable is the immunity issued by a United States district judge in a matter before the judge. I understand. If you're investigating a case in Atlanta and you want John Doe to have immunity, where do you go? To the court in Atlanta. To the court. Correct. You might say to John Doe, we're not going to prosecute you. That doesn't mean anything, does it? You have some shame, I suppose, or embarrassment if he's indicted, but that's just his tough luck. Is that not the case? Yes, I will say in this instance, Mr. Epstein was going to raise on a motion... Forget Mr. Epstein, we're talking about John Doe. Yes, what I envision is they would try and raise it in a motion to dismiss the indictment that the government had bound itself to the agreement. Okay. Is the NPA part of the record in this case? Yes. It's been filed? Yes. Okay, I don't know if you know it off the top of your head what docket entry it is. I do not know the docket entry. It's a very long case. I know it's been attached as an exhibit. Can you and Mr. Casale just write a handwritten note to the clerk where it is? Certainly. The NPA and what all it provides. Yes. Thank you. Let me ask you one more question before we kind of wind down, which may or may not be happening. Why can't we, why couldn't we do... Mr. Casale was describing this Fifth Circuit case to us, Dean. If we're concerned, as I'll confess I am, about the application of the statute, at least in some kind of free-ranging, broad-based way, pre-indictment. Because what I worry about is conferral with victims about search warrants and raids and interrogations. But Mr. Casale points out, rightly, Fifth Circuit has this case called Dean and said, well, we don't have to decide all those hard questions. But as to, once a case has matured to this point, where it's good for this train only, it applies here. Why couldn't we do a Dean? I would say a couple of things. A Dean was fairly careful in restricting its holding to the facts of that particular case. Right, I mean, and Judge Hall has said, right, couldn't we do that here? So check. And the other thing I would say is there's a distinction factually between Dean and what's happening in this case. In Dean, they basically had resolved the case. They were coming to the court in anticipation of filing a charging document along with the plea agreement, which would resolve the case in its entirety. And they basically were asking for the court to approve of a process by which the victims would, in effect, not be fully notified of the existence of the plea negotiations in advance. How is that really different substantively from what we're talking about here? Because here we had a case that really was still ongoing in terms of the investigation. There was an indictment, a draft indictment that was prepared. There was a draft prosecution memo that had been prepared. But it had never been approved for charging by the U.S. Attorney's Office. It had not fully come to that point. And one of the things that the record shows is that even as Mr. Epstein was appealing, in effect, the decision by the Southern District of Florida to Maine Justice, the investigation continued. And that's one of the reasons, maybe not a good reason, why it is that letters were being sent to Ms. Wild and other victims saying the investigation was ongoing. Because they did believe that the case might still get to a charging point, which it never did, because Mr. Epstein fulfilled the terms of the agreement. But clearly, right, the record reflects that there is a point in this case at which the MPA is a done deal, and you're still telling Ms. Wild, we're going after him. Right? How's that different substantively from what was going on in Dean? From time MPA to the end, in effect, that sliver of time, how's that different from what was going on in Dean? Well, because the difference between basically the case being at the charging stage. When they went to the court in the Dean case, everything was done. They were just asking the court for basically approval on how they were going to notify the victims. They had a, there was an anticipation that there was going to be a criminal proceeding, there was a charging instrument, there was a plea document. It was done. That's not what happened here. It's true that the investigation did get to the point where the office was able to identify a defendant and a certain set of victims, but it hadn't matured to the end. They weren't ready to charge the case. Indeed, they decided not to charge the case. Had it even gone to the grand jury? There had been grand jury proceedings. In this case. There had been grand jury proceedings, but there was no charging document presented to a grand jury, and it had never been approved. And it had never been approved to be presented to the grand jury. And the investigation then continued. That's what the factual record showed. And so this is a distinct situation. And then setting aside the factual distinction, I think it would be very hard to administer, to give a victim enforceable rights against the government, when the case has matured sufficiently. As a prosecutor, I'd find that very challenging to figure out when my case has matured sufficiently. During the course of an investigation, you could talk to a witness and think one thing, you could talk to somebody else the next day and think something else. And the case can change a lot over a period of time. And so the idea that you're investing within a victim enforceable rights against the government during this time when the case could be changing, and frankly, it could be dangerous sometimes to be talking to third parties, even if they're victims. It's the government, doesn't it? I'm sorry? It's the court and the position of overseeing the government's function. It does. How do you square that with a separation of powers doctrine? It does. And it certainly creates a strange dynamic of adversity or sort of a victim and the government being in opposition to each other, whereas they should be aligned. And the whole policy, for example, in plea bargaining and setting aside police, everything that's in the criminal rules and everything, the policy underpinnings of the criminal rules are all guaranteed to keep the judge out of the prosecutorial function. Would you agree with that? Yes. Completely? Yes. I mean, it's unethical. It's inappropriate for a judge even to get involved in a plea bargain. That's true. Even when the parties come before him. And this is after indictment. I can't imagine that policy being inapplicable pre-indictment. That's true. And I think when you talk about conferral, it might be more clear, because the requirement is you have a conversation. But what does it mean to be fair? So we're going to be litigating with our victims over whether something's fair. The government has not challenged the Crime Victims Act. You've not challenged the constitutionality of the obligations imposed on the government in the act. Is that correct? Correct. I have a question about immunity, because I just don't have enough background. Is it commonplace, or when you have an immunity agreement with one defendant, that you have four other defendants or, excuse me, named parties granted immunity without them signing the document or being party? Or is that, at least in my experience, highly unusual? I've never seen it before. Certainly, you can do multiple defendants, multiple immunities. But typically, they're before the court. They're signing on to that agreement, because they're agreeing to cooperate or they're agreeing to whatever they're agreeing to. So is this immunity agreement highly unusual to have it reach four named co-conspirators? Because that's my impression, but I could be wrong. I don't think you're wrong. Okay. There was a lot that was unusual about that. I just want to know about that part, because it goes to the remedy. It goes to my concern. It's just I don't know why a court would order somebody to be joined or do anything about it. It's so possible, and I don't know what I think about this. You have lots of steps to get to it. But it just seems to me you don't need to join anybody. I mean, how can they ever find benefit of it? They never got anything. It's just kind of there. I don't see how it harms anybody. Set aside that, given the egregious lack of conferral here and so forth. And since it's highly unusual to name four parties, it's just unusual. There is a lot. But I appreciate your candor in answering my question. Yes. And one of the things that was unusual about the non-prosecution agreement is the fact that whether it was, again, a good idea or a bad idea, there was a carve-out in the document to ensure that the victims who had been identified were not only not prohibited from seeking remedies under 2255, but that Mr. Epstein had basically no defense to any action brought against him, and he would concede liability. And so that was a part of the agreement between the government and Mr. Epstein. Again, whether that was a good or a bad idea, it was highly unusual, but it was an effort to create some protections for the victims, and one of the reasons why the line AUSA decided that it wasn't a good idea to disclose it when she did. Yes, I think we all agree things sometimes look different in hindsight. Yes. And I understand that. But that doesn't really change the unusual procedure of granting immunity to four other defendants, or excuse me, alleged co-conspirators in this type of situation. Yes. All right. If there are no further questions, I'll be seated. Very well. Thank you so much, Mr. Cassell. You've got your full 20 minutes of rebuttal. Please. Thank you for the time, Your Honor. I know it's a very complicated case. Let me begin immediately with the question that you raised, Judge Newsom, the jurisdictional question. This interesting issue about whether the Crime Victims' Rights Act applies early and so forth, did the government have to file a cross-appeal to raise that issue? As you pointed out in your question, typically a party can defend the judgment below, which is to say, So then the question is, what did the judgment below say? The judgment below said the case will be closed because the case is moot. That is the only judgment in front of you, and that is a legal error for all the reasons that we've suggested. Well, I agree with you that the act applies pre-indictment. Applies by its language. That begs the question whether or not there's a remedy. That's separate. You agree that that's a separate issue? Yes. Okay. And whether it's redressable, whether the... whatever benefits or rights are conveyed pre-indictment can be redressed in the Article III court as another issue altogether. That's right, and that's an issue that we hope that you'll remand to the district court to sort through. You're familiar with the policy underpinnings of the Federal Rules of Criminal Procedure with regards to plea agreements, setting aside plea agreements, plea bargaining, all those kinds of things? Yes. And you agree that the policy is the district judge can have nothing whatsoever to do with it? With the negotiation of the agreement. And cannot interject... Let's take pre-indictment. Can't possibly interject himself ethically. I'm not saying it doesn't happen, but it's wrong to interject himself in what's going on between the defense and the government. During the negotiation. Yes, you agree with that. It would be... It would be totally inappropriate for a district judge to stick his nose in it. To become a party to that, yes. Well, party or nothing, just to get involved. He's not a party, just to get involved. Agreed. Get the lawyers together and say, I think he ought to be doing these things. Correct. Okay. So if we agree that the act applies pre-indictment, I can skip over this argument. It seemed like your colleague was a bit... had a question on it. And so what I would refer Judge Newsom to is the excellent opinion from Judge Hull just a few months ago in the Lopez case. And what Lopez says, and follows U.S. Supreme Court precedent, that an appellee who does not cross-appeal may not attack the judgment with a view to enlarging his own rights or diminishing the rights of his adversary. And what the government is asking you to do today is to rule that the Crime Victims' Rights Act does not apply pre-charging. That enlarges... Because there's no remedy. No, they're saying the act simply does not apply. I understand that, but... I speak for myself. I read the government as saying it doesn't apply because there is nothing an Article III judge could do consistent with the separation of powers doctrine. I think that's one of their arguments. We disagree with it. That goes to standing. That goes to whether the right can be redressed. Right, so that goes to... The government doesn't have to cross-appeal on that ground, does it? It has to cross-appeal... Because we have an abiding obligation ourselves to make that determination, don't we? Constitutional standing... Don't we have the obligation to decide that? Constitutional standing, yes, but statutory standing, no. I understand. I'm speaking of constitutional standing. Correct, and I agree with you on that, but the question of the reach of the CBRA is a matter of statutory standing, and I would direct the court's attention, this is page 11, footnote 3 of our brief, to the Corma makeup case, 11th Circuit, 2019, in which the court said that statutory standing is not a jurisdictional issue, and therefore it's not before the court unless there's a cross-appeal. All the statutory standing analysis, in my view, would occur after there's an indictment in which the court could say, from a standpoint of prudential considerations, I'm not going to grant relief. Well, so the issue is, are you going to rule on whether the CBRA applies pre-charging? We won that issue in the district court, and now the question is, how does that issue get in front of you? All right, so help me with that. I'm just trying to figure out, this is not a loaded question, I'm just trying to figure out how it would happen. How should they have brought that here? I mean, should they have appealed back in 2011 or 13 or whenever that issue was ruled against them, decided against them? No, that would have been interlocutory. In our view, what should happen is this. You have a narrow, non-merits judgment in front of you. The case is moved. That's wrong. You should remand to the district court. The district court will then conduct further proceedings. I'm sure he'll pay close attention to all the points that Judge Joe Flatt is raising about whether that remedy would intrude on separation of powers. It will then enter some kind of an order, maybe the same order, maybe a different order. At that point, the government would have an option because the case would then be concluded. This is essentially an interlocutory appeal with respect to the merits of an issue, again, an issue that we won. And it's very ironic. I've got to stop you there because the summary judgment order was in February 2019. Yes. Judge Mehra, in a very comprehensive order, made legal rulings as a matter of law. The CDRA had been violated. Lots of legal rulings. Correct. But he didn't go to the remedy, what was the remedy for all of those violations. Then we come in September. He briefed the remedy in light of the July event and the death. Everybody briefed the remedy and he really says, well, the issues as to the remedy are moot. Okay. And so you get no remedy at all. That's what happened. Okay. So now the case is up here. Yes. Y'all appealed the remedy issue. We appealed the mootness issue. You didn't reach the remedy. I thought you wrote a lot about what the remedy should be. Are you just saying, I appeal saying because he could order setting aside the NPA, it's not moot because that's something he could have done. Correct. That's exactly right. But you also, you kind of went to the merits of the remedy. Well, it seems like there's a lot of interest in the merits of the issues today and so we have. Well, that's the merits of the remedy. So it seems like in saying it was, it's kind of a catch me too. In saying it's not moot. You went to the merits of the case to show there's a violation and here's what the remedy should be, including setting aside the NPA. You asked us, I thought, to direct the district court. You didn't say just send it back. You may have said at a minimum send it back. I'll have to go look at the brief. But my recollection, I read it some time ago, is that you said, tell the district court, this is the remedy here, set aside, i.e., it's not moot. And why it's not moot is because, one, it can attach pre-indictment. Two, it allows setting aside. And so tell the district court, let us have a hearing. Give us these documents. They're not work product. It seemed like in showing it was not moot, you went to the merits of everything and asked us to order these things. Now, maybe I'm... No, you're right. Okay. I'm just talking about what all you raised up here on appeal as to whether they had to file a cross appeal. I don't know the answer, but I'm just trying to see what you raised to see whether they really needed to file a cross appeal. I would be committing ineffective assistance of counsel if I didn't ask you to give us the world. I'm not criticizing you for doing that, but I'm not so sure the only issue up here in our appeal is just this mootness thing. That's all I'm saying. Well, that's all we need to win. That's a different issue. That's not what you were telling us. You were saying we should do nothing but mootness and send it all back, and maybe we should. I don't know. We certainly would be happy with that. We'll be happier with a more comprehensive ruling. Were the other remedial arguments that you were making sort of adjunct to your rescission slash mootness argument, you know, sort of about discovery and a victim impact hearing and stuff, those sort of follow on to the request? So the only way that the court can, in our view, sustain the judgment below is to say that any ruling from Judge Mera would have been meaningless. That was the word he used. That's the definition of mootness. So if you read through our briefs and find one issue, did you say, by golly, I think that's an issue that remained live in front of the district court, then at that point, we win the case. Case is remanded. Judge Mera will look at all that. He'll look at separation of powers issues and everything else. And that's why I'm saying that at a minimum, we get this. Now, Judge Hall is right that we have asked for a maximum set of remedies as well. But that's what we all need to conclude is that there is one issue that remains live. And that's why I guess the issue of the CVRA applying pre-charging becomes important. That's an issue of statutory standing. It's not an issue of constitutional standing. The government has raised no constitutional challenge to the act. That is an issue that would enlarge the rights of the government. And this is one of the points that is so ironic. Remember that in 2006, the government sent a letter to dozens and dozens of crime victims saying, you have rights under the Crime Victims' Rights Act. You can petition the court. We're going to protect those rights. And now they're asking you to enter an order that would strip those rights away, not just from Ms. Wild, but from dozens and dozens of others, of other Epstein victims. That's the very reason why a cross-appeal is required. If there had been a cross-appeal, I'm assuming the National Crime Victim Law Institute would have filed a different amicus brief than the one you received. I'm assuming members of Congress, who you know from the legislative history and the various letters that have been exchanged, have a very strong view that this act does apply pre-charging. None of those potentially interested people were informed that this was going to be an issue that you were going to be ruling on because the government did not take a cross-appeal. And so because the government took a cross-appeal, I'm not asking you to give us a thumbs up or thumbs down. All you do is send this case back to the district court, remand, let Judge Maris sort out the remedy issue. Don't we have to tell them why it's not moot? Yes, because there are issues... Right, so we have to say it's not meaningless. Correct. All right, and we have to say it's not meaningless because we have to identify some remedy under the statute that they're entitled to receive. Or could receive. We disagree that the district... He basically said in his ruling, there is no remedy now available to you. He says I can't do the set-aside of the co-conspirators because they're not parties. That would be meaningless. I can't do this. That is meaningless. Right. And so you're trying to pull it apart, but your argument on mootness is it's not moot because there is a live, viable remedy. Correct. And you're asking us to identify what the remedy is in order to say it's not moot. That's what I thought your appeal was about. Correct. Okay. I mean, you've summarized it. Obviously, there's a lot of nuance there. All you would have to say, and again, this is where I think the pre-charging issue becomes important. He's going to go back if we don't give him guidance on the remedies. One, whether it applies pre-indictment, whether you can set aside all that. He'll just say, I don't see any remedy, and then we're right back here. No, he won't say that, with all respect, because in 2013, he ruled that rescission is an available remedy because the Crime Victims' Rights Act applies pre-charging. When you remand, that then becomes an available remedy under the law of the case, at least the law that exists in the district court. The mistake that the judge made was to assume, well, I can't reach these kinds of remedial issues because the co-conspirators aren't sitting here in front of me as parties to the case, and we've given you multiple reasons why that particular legal conclusion was incorrect. Now, you don't have to reach all these other issues about pre-charging application and so forth because Judge Mayer has already decided those. Send it back. Let him sort out the remedial issues. You want us to say the government has offered its right to appeal all those rulings but not filing a cross-appeal on the mootness, so you want us to tell him all your rulings are no longer subject to appeal and they're the law of the case. That's what you want. We wouldn't be disappointed with that. We are actually asking for a narrower ruling. They are not properly in front of the court at this time. The judge has ruled it's moot. He was wrong. Send it back. He then adjudicates it and comes up with whatever remedy is appropriate. Why is he wrong? He's wrong because there remain a number of meaningful decisions that could be entered. And what is that? What are the meaningful decisions that could be entered? One would be, as between the government and Ms. Wild, the non-prosecution immunity provisions are null and void. That would be one example. And again, this is not something that Judge Marra is unfamiliar with. In 2013... Instead of us deciding whether that's true or not, you want us to say you've already decided it, so that's a good remedy, so just set it aside, District Court. That's what you're telling us. Consider whether to set it aside. Again, we wouldn't be disappointed with direction from this court ordering him to set it aside. But the point is, the fact that we're having these discussions about whether that would be appropriate, whether they're intended beneficiaries or not, those are all live issues that the court could decide, and therefore the case is not moved. That's why it needs to go back to the District Court. And again, just to the issue about does this apply before charging, you would be creating a circuit split, I believe, the government concedes if you conclude it doesn't apply pre-charging, but we're asking, again, for a narrow holding. This is an unusual case where the government sent notice to victims. It then entered into an agreement totally resolving the case. It then concealed and misled what it had done from the victims, affirmatively misled them. They then scheduled a court hearing to make the non-prosecution agreement binding, and the government then communicated to the victims about that court hearing. On that unusual set of facts, hopefully unlikely to repeat itself in American legal history, you could find, as Judge Merritt did, that the Crime Victims' Rights Act applies, and that's consistent with the intent, the purpose, the whole idea behind the Crime Victims' Rights Act was that people like Ms. Wild would not be kept in the dark when their case was being resolved. So what about all of that as an equitable matter is very appealing. What about, though, Ms. Steinberg's point that as a prosecutor, court, no matter how narrowly you try to tailor this opinion, whether you say in words or substance that it's good for this right only, there's really no way to draw a line that will prevent creep, if you will, into detection, investigation, whatever, the scarier stuff. Her argument is just demonstrably wrong because the Fifth Circuit ruled approximately 10 years ago that rights apply in the Fifth Circuit in certain situations pre-charge. And your point is there's been no litigation about CVRA rights being violated in the context of an ongoing police investigation. No problems whatsoever in 10 years in one of the nation's largest circuits with a heavy criminal docket. So we can come up with hypothetical scenarios about how the sky might fall, but the sky has not fallen in the Fifth Circuit, and it won't fall in this circuit if you hold on these very unusual facts where Ms. Wild has been deliberately misled about what's going on. In those circumstances, the government has an obligation to confer, not to mention the right to treat her with fairness and the right to receive accurate and timely notice about court hearings. Your ruling, we understand, is going to be narrow, to use that term again, but it's an important one for Ms. Wild and dozens of other sexual assault victims of one of the largest sex trafficking organizations to ever operate in the United States. On these unusual facts, the district court failed in its obligation to make sure, and again, the language is mandatory, it, quote, shall ensure, close quote, that Ms. Wild gets her rights. She has not been assured of her rights, and the most effective way to give her her rights is to rescind the immunity provisions in the non-prosecution agreement. I need to turn to the issues in New York because we're hearing, again, based on non-record information that somehow New York takes care of the matter. We agree with Judge Joe Flatt. What prosecutors are doing with New York crimes has no bearing on what prosecutors have to do here with regard to Florida crimes. It's important to understand that a sex trafficking crime, under, for example, 1591, is a very serious crime with a penalty of up to life in prison. And the fact that a five-year conspiracy charge could be filed up in New York doesn't take away any rights that Ms. Wild would have to confer with prosecutors in this district to ask that dozens of sex trafficking crimes committed against her... What is the statute of limitations on these crimes? I have no idea. So they've been extended, I think it's 20 or 25 years. So I think there's no dispute among the parties that these substantive offenses... And again, if you look at what the government said in its brief, page 21 of its brief, it agreed that the CVRA rights attach for each offense. Dozens of sex trafficking offenses were committed against Ms. Wild in the Southern District of Florida. She has rights on those crimes that cannot be pursued in New York. And again, if the court is going to make some kind of a ruling that something happened up in New York that affected her rights, it would be doing so based not on any record information about what happened when prosecutors were pursuing those cases. I will represent to the court that there has been no conferral with Ms. Wild about prosecuting the substantive sex trafficking offenses that were committed against her in Florida. The New York prosecutors have no jurisdiction to file substantive sex trafficking offenses here in the Southern District of Florida. And that's why the New York proceedings have nothing to do with this particular case. There has been no consultation with Ms. Wild, no conferral with Ms. Wild, about what to do with those cases. And that's why Judge Mara ruled back in 2013. He said, look, there may be other districts that have some ability to look at some of these cases, but that doesn't detract from Ms. Wild's opportunity to seek a remedy from this court about violation of her rights with regard to offenses here in Florida. Can I ask you a quick question? So in response to Judge Choflat's concerns about separation of powers and court intervention in ongoing prosecutorial matters, your response earlier was, you know, we're not going to be sort of countermanding indictment decisions here. Once the conferral process has occurred, the U.S. attorney has discharged its obligation, they can do whatever they want to at that point. Correct. So in response, Ms. Steinberg says, yeah, what about the slipperier provision in the act that refers to, like, being treated fairly? She says, like, conferral is something you can kind of put in a bucket, but being treated fairly has these tentacles that might sort of sprawl around sort of the ongoing investigation prosecution. Is there a deeper separation of powers risk there? We don't see any separation of powers risk because clearly the government is only going to be held to its statutory obligation to treat victims fairly. I mean, there's this notion that it's true under the Constitution that the prosecution, the executive branch, gets to make certain charging decisions. But there are all kinds of statutes that limit when and how they can make them. The Speedy Trial Act gives rights to defendants, and if they don't follow those rights, certain remedies and obligations follow. Similarly, Congress was entitled to say to the government, you have to treat crime victims with fairness. You have to send them notices and so forth. And I would point out that that right to fairness, again, that was something that we raised in front of Judge Marra, and as you point out, it may have much broader implications. Judge Marra has never ruled on that, and we still haven't heard from the government their position on whether this case should be remanded at least so that Judge Marra can reach the right to fairness issue and the right to notice of court hearing issues. Both of those were presented through years and years of litigation, and yet his ruling never reached that in any way whatsoever. Okay. Very well. Thank you both very much. Well argued on both sides. It's a unique case. We appreciate the effort that you put into it. All right, so we'll be in recess until tomorrow morning at 9 a.m.